UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEREN ELMALIACH, as an individual, as
statutory representative of the Estate of EMI
ELMALIACH and as natural guardian of
plaintiff, JAN ELMALIACH, et al.,

                          Plaintiffs,                          09 Civ. 2130 (PGG)

              - against -                                      **MEMORANDUM OPINION
                                                               & ORDER**

BANK OF CHINA LIMITED,
410 Madison Avenue
New York, New York 10017,

                          Defendant.

PAUL G. GARDEPHE, U.S.D.J.:

                Plaintiffs in this action are Israeli citizens who were injured in attacks

carried out by Palestine Islamic Jihad ("PIJ") and Hamas between April 17, 2006 and

January 29, 2007 ("the terrorist attacks"), family members of victims killed in these

attacks, and the estates of victims killed in these attacks.  (Cmplt. ¶ 2)  Plaintiffs

commenced this action in Supreme Court for the State of New York, New York County,

on February 12, 2009, alleging claims under the Israeli Civil Wrongs Ordinance (New

Version) – 1968 for negligence and breach of statutory duty.  (Id. ¶ 1)  Plaintiffs asserts

that Defendant Bank of China Limited ("BOC") is liable for the damages they suffered

from the terrorist attacks, because BOC provided banking services to PIJ and to Hamas

which "caused, enabled and facilitated the terrorist attacks."  (Id. ¶ 3)

                On March 9, 2009, Defendant filed a notice of removal pursuant to 28

U.S.C. §§ 1441 and 1446.  (Notice of Removal ¶ 1) [Docket No.1]  Thereafter, Defendant

moved pursuant to Fed. R. Civ. P. 41(d) for an award of costs and a stay of these

proceedings [Docket No. 5], arguing that this action is identical to an earlier action that Plaintiffs had filed in California and then voluntarily dismissed.  Defendant has also moved to dismiss under Fed. R. Civ. P. 12(b)(6) [Docket No. 17], arguing that the Complaint fails to state a claim upon which relief can be granted.  In the alternative, Defendant argues that this action should be dismissed pursuant to the doctrine of <u>forum non conveniens</u>.

In an order dated August 10, 2009 [Docket No. 38], this Court directed the parties to submit letter briefs addressing whether this Court has subject matter jurisdiction over this action.  In their submissions, both sides asserted that this Court has subject matter jurisdiction. (Aug. 17, 2009 Loughlin Ltr. at 1; Aug. 21, 2009 Tolchin Ltr. at 2)

For the reasons stated below, this Court has no subject matter jurisdiction. Accordingly, this action will be remanded to state court, and Defendant's pending motions will be denied as moot.  <u>See</u> <u>In re Fry</u>, No. 03-20394, 2008 Bankr. LEXIS 4367 (Mar. 27, 2008 Bankr. S.D.Ga.) (refusing to consider motion for award of costs under Fed. R. Civ. P. 41(d) after concluding that court lacked subject matter jurisdiction).

## <u>BACKGROUND</u>

### I.    <u>THE COMPLAINT</u>

Plaintiffs are all citizens of Israel.  (<u>Id.</u> ¶ 4).  Defendant BOC is headquartered in and organized under the laws of the People's Republic of China, and has branches in New York, New York.  (<u>Id.</u> ¶ 31; Notice of Removal ¶ 17)

The Complaint alleges that in July 2003, BOC began providing extensive banking services to PIJ and Hamas, executing dozens of wire transfers for the PIJ and Hamas leadership in Iran, Syria, and elsewhere in the Middle East.  (<u>Id.</u> ¶ 63)  Plaintiffs

further allege that these transfers were executed by and through BOC's branches in the United States.  (Id. ¶ 63)  According to the Complaint, most of these transfers were made to an account at a BOC branch in Guanzhou, China, which was owned by a senior operative and agent of PIJ and Hamas.  (Id. ¶ 63)  The money was then transmitted to PIJ and Hamas leadership in Israel, the West Bank, and the Gaza Strip, and was used in connection with planning, preparing for, and executing the terrorist attacks.  (Id. ¶ 64)

> Plaintiffs allege that
>
> [a]s a result of [BOC's] conduct, the PIJ and Hamas were able to transfer million[s] of dollars in funds to their terrorist leadership in Israel, the West Bank and the Gaza Strip, which substantially increased and facilitated their ability to plan and carry out terrorist attacks, including the Terrorist Attacks in which the instant plaintiffs were harmed and the decedents killed.  The Terrorist Attacks in which the instant plaintiffs were harmed and the decedents killed were thereby enabled, facilitated, and proximately caused by the conduct of Defendant [BOC]. . . .

(Id. ¶ 69)

The Complaint sets out multiple means by which BOC became aware or "should have known" that the wire transfers were being made by PIJ and Hamas for the purpose of carrying out terrorist attacks, including, inter alia:  (1) information disclosed by Israeli counter-terrorism officials to People's Republic of China ("PRC") officials at an April  2005 meeting (id. ¶ 71); (2) the circumstances surrounding the wire transfers, which involved "typical indicia of transactions made for illegal purposes" (id. ¶ 73); and (3) through various duties imposed on BOC by certain United States banking statutes and regulations, the performance of which should have alerted BOC to the nature and purpose of these transfers.  (Id. ¶¶ 74, 75, 77, 85)

The Complaint asserts claims for negligence and breach of statutory duty under Israeli law, and seeks $750 million in damages.  (Id. ¶¶ 79-101)

II.     **PROCEDURAL HISTORY**

        This action has a long and tortured procedural history, reflecting several false starts resulting from the pursuit of erroneous legal theories, and contradictory positions asserted by Plaintiffs' counsel.

        A.     **Proceedings in the Central District of California**

        On August 21, 2008, Plaintiffs filed <u>Zahavi et al. v. Bank of China Ltd.,</u> No. BC396714. [Docket No. 6, Ex. A ("<u>Zahavi</u> Cmplt.")] in Superior Court of the State of California, Los Angeles County.  That action involved the same plaintiffs, the same defendant, the same facts, and the same lead counsel as the instant action; the two complaints differ only insofar as the Israeli breach of statutory duty claim in <u>Zahavi</u> was premised on violations of United States statutes and regulations. (<u>Zahavi</u> Cmplt. ¶ 102) On September 22, 2008, BOC removed the action to the United States District Court for the Central District of California, where the case was assigned to District Judge Manuel L. Real. [No. 08 Civ. 6236 (C.D. Cal.), Docket No. 1].

        On October 21, 2008, the <u>Zahavi</u> plaintiffs filed an amended complaint and a motion to remand the case to state court. [No. 08 Civ. 6236 (C.D. Cal.), Docket No. 26 ("<u>Zahavi</u> Amended Cmplt.")].  In their amended complaint, the <u>Zahavi</u> plaintiffs deleted references to U.S. statutes and regulations – apparently in a misguided effort to destroy federal subject matter jurisdiction.  In a brief accompanying their motion to remand, the <u>Zahavi</u> plaintiffs explained that their earlier

        allegation that BOC was liable for the tort of Breach of Statutory Duty under Israeli law because it violated **U.S. statutes** was improvidently made.  Israeli statutory definitional law provides that a Breach of Statutory Duty can arise only from violation of an **Israeli** statute or regulation. Accordingly, Plaintiffs have filed an amended complaint which properly pleads the Breach of Statutory Duty claim by alleging that BOC violated

4

> various Israeli statutory provisions, and omitting the previous claims that
> BOC violated U.S. federal law.
>
> Thus, this case does not, and in fact never did, turn in any way on the
> question of whether BOC violated federal law, and there is no basis
> whatsoever for federal subject-matter jurisdiction over this action.
>
>     *                *                *                *
>
> [A] determination of BOC's liability for Breach of Statutory Duty under
> Israeli law **would not require any examination at all of U.S. federal
> law.**  That is because Plaintiff's assertion that BOC could be held liable
> for Breach of Statutory Duty on the basis of violations of U.S. federal
> statutes, was, regrettably, erroneous as a matter of Israeli law.

(Loughlin Ltr., Ex. 1 (Plaintiffs' Memorandum of Points and Authorities in support of

Motion to Remand in <u>Zahavi et al. v. Bank of China Ltd.</u>), at 4, 6 (emphasis in original).

        BOC opposed the remand motion, arguing, <u>inter alia</u>, that a party cannot

amend a pleading to defeat removal.  (Loughlin Ltr. at 2; [No. 08 Civ. 6236 (C.D. Cal.),

Docket No. 30 (Defendant's Opposition to Motion to Remand), at 3])  At a December 1,

2008 hearing, Judge Real – without discussion[1] – stated that "[t]he motion to remand is

denied.  There is a federal claim in the complaint, and that presides in this court and not

in the superior court."  (Loughlin Ltr., Ex. 2 (Transcript of December 1, 2008

proceedings in <u>Zahavi et al. v. Bank of China Ltd.</u>), at 4)  On December 3, 2008, Judge

Real issued a one-page written order to the same effect.  (<u>Id.</u>, Ex. 3)  On January 5, 2009,

Judge Real denied Plaintiffs' motion for relief from the order denying the remand motion.

(<u>Id.</u>, Ex. 5)

        On January 2, 2009, BOC filed a motion to dismiss, arguing that (1) many

of Plaintiffs' claims were barred by the statute of limitations; (2) plaintiffs failed to plead

---

[1]  Judge Real denied the motion to remand without discussion because Plaintiffs' counsel
had neglected to appear for the hearing.  (Loughlin Ltr., Ex. 4 (Memorandum of Points
and Authorities in support of Plaintiff's Motion for Relief from Order Denying Plaintiffs'
Motion to Remand in <u>Zahavi et al. v. Bank of China Ltd.</u>), at 2)

a legally cognizable claim under Israeli law; and (3) the case should be transferred to China under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  Judge Real scheduled a hearing on BOC's motion for February 2, 2009. (Loughlin Ltr. at 3)  On February 1, 2009, however, Plaintiffs filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). [No. 08 Civ. 6236 (C.D. Cal.), Docket No. 58]  The case was accordingly dismissed without prejudice.  [No. 08 Civ. 6236 (C.D. Cal. 2008), Docket No. 60]

Ten days later, on February 12, 2009, Plaintiffs commenced the instant action in New York State Supreme Court. (Notice of Removal, Ex. 1)  Defendant filed its removal petition on March 9, 2009.

## DISCUSSION

In support of its argument that this Court has subject matter jurisdiction, Defendant contends that (1) this Court should not, under the "law of the case" doctrine, revisit Judge Real's ruling concerning subject matter jurisdiction; (2) there is federal question jurisdiction under 28 U.S.C. § 1331; and (3) there is diversity jurisdiction under 28 U.S.C. § 1332(a)(2), because Plaintiffs are citizens of a foreign state and BOC – by virtue of its New York branches – is deemed a citizen of New York.  (Loughlin Ltr. at 1) Plaintiffs "do not take issue with BOC's subject-matter [jurisdiction] arguments" and agree that "this matter should continue before this Court."  (Tolchin Ltr. at 2)

For the reasons stated below, the "law of the case" doctrine is not applicable here, there is no federal question jurisdiction, and there is no diversity jurisdiction.  Accordingly, this case must be remanded to New York state court.

I.      **THIS COURT IS NOT BOUND BY THE DENIAL
        <u>OF PLAINTIFFS' REMAND MOTION IN ZAHAVI</u>**

        Relying on the "law of the case" doctrine, Defendant argues that this

Court "should decline to revisit Judge Real's rulings on subject matter jurisdiction" made

in the <u>Zahavi</u> case.  (Loughlin Ltr. at 4)  Under the "law of the case" doctrine, "a decision

on an issue of law made at one stage of a case becomes binding precedent to be followed

in subsequent stages of the same litigation." <u>Liona Corp. v. PCH Assocs.</u>, 949 F.2d 585,

592 (2d Cir. 1991).  "The doctrine posits that when a court decides upon a rule of law,

that decision should continue to govern the same issues in subsequent stages in the same

case." <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 815-16 (1988).

However, "[t]his doctrine is a discretionary rule of practice and generally does not limit a

court's power to reconsider an issue." <u>Liona Corp.</u>, 949 F.2d at 592 (citations omitted);

<u>see</u> <u>also</u> <u>Tischmann v. ITT/Sheraton Corp.</u>, 145 F.3d 561, 564 (2d Cir. 1998) ("[T]he [law

of the case] doctrine 'is, at best, a discretionary doctrine, which does not constitute a

limitation on the court's power' but merely expresses a general reluctance, absent good

cause, to reopen rulings that the parties have relied upon."  (quoting <u>Doctor's Assocs.,

Inc. v. Distajo</u>, 107 F.3d 126, 131 (2d Cir.), <u>cert</u> <u>denied</u>, 522 U.S. 948 (1997))).

        "While the doctrine is ordinarily applied in later stages of the same

lawsuit, it also has application to different lawsuits between the same parties." <u>Liona

Corp.</u>, 949 F.2d at 592 (citing <u>Schupak v. Califano</u>, 454 F.Supp. 105, 114 n.17 (E.D.N.Y.

1978) (applying law of the case doctrine to subsequent suit between same parties

although recognizing that doing so "deviates from customary practice . . . [because] the

doctrine is generally employed to bar relitigation of issues decided in earlier proceedings

of the <u>same</u> lawsuit.")(emphasis in original))

7

Here, application of the law of the case doctrine would be inappropriate, because the original complaint in <u>Zahavi</u> – on which Judge Real based his subject matter jurisdiction ruling – differs materially from the complaint in this action.  The original complaint in <u>Zahavi</u> alleged a breach of statutory duty based on violations of U.S. statutes and regulations:

> The statutory obligations breached by defendant [BOC] include, without limitation, the provisions of the following enactments:
>
> a. The Bank Secrecy Act (31 U.S.C. § 5311 et seq.);
>
> b. 31 C.F.R. Part 103;
>
> c. 18 U.S.C. §§2331-2339 (criminal prohibitions on provisions of material support and resources, including banking services, to terrorist organizations).

(<u>Zahavi</u> Cmplt. ¶ 102)  After Defendant filed its removal petition, Plaintiffs filed an amended complaint that deleted these references to U.S. statutes and regulations, in a bid to defeat federal jurisdiction.  (<u>Zahavi</u> Amended Cmplt. ¶ 100)

In ruling on the motion to remand, however, Judge Real was required to consider the original <u>Zahavi</u> complaint, because only that version of the complaint existed at the time of removal.  <u>See</u> <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116 (2d Cir. 2003) ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed.") (citing <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534, 537 (1939) ("The second amended complaint should not have been considered in determining the right to remove, which in a case like the present one was to be determined according to the plaintiffs' pleading at the time of the petition for removal."); <u>Albright v. R.J. Reynolds Tobacco Co.</u>, 531 F.2d 132, 135 (3d Cir. 1976) ("It is settled that generally the right of removal is decided by the pleadings, viewed as of the time when the petition for

removal is filed.")); see also Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) ("[N]ormally jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments…."). Accordingly, while in the amended complaint the Zahavi plaintiffs removed references to violations of U.S. statutes and regulations, Judge Real was required to consider the original Zahavi complaint, in which the Zahavi plaintiffs predicated their claims on violations of federal statutes and regulations.  (Zahavi Cmplt. ¶ 102)

        In the instant action, Plaintiffs' complaint does not include the references to violations of U.S. statutes and regulations on which the original Zahavi complaint predicated plaintiffs' statutory breach claim.  Indeed, Plaintiffs' causes of action here are drawn solely from Israeli statutes.  (Cmplt. ¶¶ 79-101)  This Court, therefore, cannot rely on Judge Real's ruling in Zahavi as to subject matter jurisdiction, because the complaint at the time of removal in Zahavi is materially different – for federal jurisdiction purposes – than the complaint here.  Accordingly, this Court must independently determine whether the complaint filed in this action provides a basis for the exercise of federal jurisdiction.[2]

---

[2]  The parties do not and could not legitimately contend that Judge Real's ruling has res judicata or collateral estoppel effect, given that the Zahavi plaintiffs voluntarily dismissed their case without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396-397 (1990) ("Dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits . . . and thus does not have a res judicata effect.") (quotations omitted); Gaft v. Mitsubishi Motor Credit of Am., No. 07 Civ. 527 (NG), 2009 U.S. Dist. LEXIS 91052, at *19 (E.D.N.Y. Sept. 22, 2009) ("Where a dismissal is without prejudice, res judicata does not apply." (citing Camarano v. Irvin, 98 F.3d 44, 47 (2d Cir. 1996); Elfenbein v. Gulf & Western Industries, Inc., 590 F.2d 445, 449 (2d Cir. 1978)); Schupak v. Califano, 454 F. Supp. 105, 113-114 (E.D.N.Y. 1978) ("Neither res judicata nor collateral estoppel is traditionally applicable to such a dismissal.")  "The effect of a voluntary dismissal

II.     **THIS COURT LACKS SUBJECT MATTER**
        <u>**JURISDICTION OVER THIS ACTION**</u>

    A.     <u>**There is No Federal Question Jurisdiction**</u>

Federal courts have jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law where "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" <u>Empire Healthchoice Assur., Inc. v. McVeigh</u>, 547 U.S. 677, 689-90 (2006) (quoting <u>Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.</u>, 463 U.S. 1, 27-28 (1983)).

In assessing grounds for removal, "'courts must make principled, pragmatic decisions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside.'" <u>Fin. and Trading, Ltd. v. Rhodia S.A.</u>, No. 04 Civ. 6083 (MBM), 2004 U.S. Dist. LEXIS 24148, 2004 WL 2754862, at *6 (S.D.N.Y. Nov. 30, 2004) (quoting <u>Barbara v. New York Stock Exch., Inc.</u>, 99 F.3d 49, 54 (2d Cir. 1996)).

In developing a standard for assessing when a plaintiff's non-federal claim "necessarily depends on resolution of a substantial question of federal law," <u>Empire Healthchoice Assur., Inc.</u>, 547 U.S. at 689-90, the Supreme Court has held that courts must determine whether the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any

---

without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought." <u>Schupak</u>, 454 F. Supp. at 113-114.

congressionally approved balance of federal and state judicial responsibilities." Grable &
Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Grable creates only a "special and small . . . [and] slim category" of cases
that may be appropriately removed to federal court.   Empire Healthchoice Assur., Inc.,
547 U.S. at 701.  Indeed, the "mere presence" of a federal issue does not create federal
jurisdiction.  Ins. Corp. of New York v. Monroe Bus Corp., 491 F. Supp. 2d 430, 434
(S.D.N.Y. 2007) (citing Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808, 813-
14 (1986)).  Nor is the assertion of a federal interest enough to warrant the exercise of
federal jurisdiction.  Empire Healthchoice Assur., Inc., 547 U.S. at 701.  The Second
Circuit has instructed district courts to "'construe the removal statute narrowly, resolving
any doubts against removability.'"  Lupo v. Human Affairs Int'l, 28 F.3d 269, 274 (2d
Cir. 1994) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir.
1991)).

Here, Plaintiffs' claims for negligence and breach of statutory duty arise
solely under Israeli law.  (Cmplt. ¶¶ 79-101)  Defendant argues, however, that Plaintiffs'
claims raise substantial and disputed issues of federal law in that (1) "the basis for relief
depends upon the resolution of the allegations that [BOC] violated obligations imposed
by the laws of the United States," and (2) "the sole alleged link of [BOC] to terrorist
activity described in the Complaint is [BOC's] alleged violations of these U.S. banking
laws."  (Notice of Removal ¶ 10; see also Loughlin Ltr. at 6-7)  Defendant is incorrect on
all counts.

As an initial matter, with respect to Plaintiffs' breach of statutory duty
claim under Israeli law, nothing in the Complaint makes any reference to U.S. law.  This

claim (Cmplt. ¶¶ 91-101) is premised solely on breaches of Israeli statutes.  Accordingly, there is not even a colorable argument that the breach of statutory duty claim presents a federal question.

Defendant's argument that Plaintiff's negligence claim under Israeli law presents a federal question fails for several reasons.  First, Plaintiffs' right to relief on their Israeli negligence claim does not "'necessarily depend[] on resolution of a substantial question of federal law.'"  Empire Healthchoice Assur., Inc., 547 U.S. at 689-90 (quoting Franchise Tax Bd. of Cal., 463 U.S. at 27-28).  Courts in this Circuit have made clear that the exercise of federal jurisdiction is inappropriate where "no cause of action . . . necessarily stands or falls based on a particular interpretation or application of federal law."  Sung v. Wasserstein et al., 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006); see also Caggiano v. Pfizer, Inc. et al., 384 F. Supp. 2d 689, 689-90 (S.D.N.Y. 2005).

Here, Plaintiffs' negligence claim against the BOC does not rise or fall based on "resolution of a substantial question of federal law."  Indeed, Plaintiffs have multiple theories of liability, only one of which makes any reference to U.S. law.

First, Plaintiffs allege – based on the April 2005 meeting between Israeli and PRC officials – that BOC had "actual knowledge that the [w]ire [t]ransfers were being made by the PIJ and Hamas for the purpose of carrying out terrorist attacks." (Cmplt. ¶ 71) (alleging that Israeli counterterrorism officials told PRC officials at the April 2005 meeting "that the wire transfers were being made by the PIJ and Hamas for the purpose of carrying out terrorist attacks" and that the PRC officials communicated this warning to BOC officials); see also Cmplt. ¶ 85 (BOC carried "out the Wire Transfers[] after and despite having been expressly warned of the illegal, dangerous and

terrorist nature, purpose and results of the Wire Transfers").  A jury could resolve BOC's liability on this theory without making any reference to U.S. law.

Second, Plaintiffs allege that the circumstances of the wire transfers – including the fact that they were "made in cash," that the proceeds were withdrawn the same or the next day after transfer, were conducted in $99,000 amounts, took place over a period of years, and had "no business or apparent lawful purpose" – were "universally recognized by all professional bankers . . . as typical indicia of transactions made for illegal purposes" (Id. ¶¶ 72-73), and put or should have put BOC on notice of the illegal purpose of the wire transfers.  This theory of liability also requires no reference to U.S. law.

Third, Plaintiffs contend that it is "notorious and known to the public at large" that terrorist organizations such as PIJ and Hamas require wire transfer services in order to execute attacks, and that this common knowledge put BOC on notice of the purpose of the wire transfers at issue here.  (Id. ¶ 76).

Finally, Plaintiffs contend that BOC's performance of its obligations under certain unnamed U.S. statutes – including the obligation "to know its customers and perform due diligence" (id. ¶ 75) – alerted or should have alerted BOC to the purpose of the wire transfers.[3]  Alternatively, Plaintiffs argue that BOC's failure to perform its obligations under U.S. law constitutes proof of negligence under Israeli law.  (Cmplt. ¶¶ 86-87)

---

[3]  The Complaint also alleges (Cmplt. ¶ 74) that BOC's performance of certain obligations under rules promulgated by the Financial Action Task Force ("FATF") should have put it on notice of the nature of the wire transfers.  The FATF is not a U.S. entity, however, but is instead an inter-governmental body.  See Financial Action Task Force (FATF) Home Page, http://www.fatf-gafi.org (last visited Mar. 25, 2010).

In sum, the Complaint sets forth multiple theories of liability against BOC, only one of which makes reference to U.S. law, and the theory that refers to U.S. law does so only for purposes of arguing that BOC was on notice of the purpose of the wire transfers, or was negligent in not divining that purpose.  Such a pleading does not provide a basis for the exercise of federal question jurisdiction, because resolution of the Israeli law negligence claim does not "necessarily depend on resolution of a substantial question of federal law."  See Empire Healthchoice Assur., Inc., 547 U.S. at 689-90.

Where, as here, a jury could find Defendant liable without resolving any questions of federal law, the claim is insufficient to create federal question jurisdiction. See Caggiano, 384 F. Supp. 2d at 690 (where "a jury could find defendants liable on each and every one of the . . . claims without being required to determine whether any federal law has been violated," the allegations are insufficient to confer federal jurisdiction); see also Broder v. Cablevision Sys. Corp., 418 F.3d 187, 194 (2d Cir. 2005) ("Where a federal issue is present as only one of multiple theories that could support a particular claim . . . this is insufficient to create federal question jurisdiction."); Caxton Int'l Ltd. v. Reserve Int'l Liquidity Fund, Ltd. (In re Reserve Fund Sec. & Derivative Litig.), No. 09 MDL 2011 (PGG), 2009 U.S. Dist. LEXIS 102411, at *19 (S.D.N.Y. Nov. 3, 2009) (holding that claims of breach of fiduciary duty did not confer federal jurisdiction because "[a] jury could find for [plaintiff] on the breach of fiduciary claim on the basis of the other duties alleged, without ever reaching the requirements of [the federal statute]"); New York v. Dell, Inc., 514 F. Supp. 2d 397, 400 (N.D.N.Y. 2007) (removal was inappropriate where federal causes of action "are merely alternate theories for Petitioner's state law claims").

14

The mere reference to federal statutes, even where a plaintiff argues that they set forth a standard of care, is an insufficient basis for the exercise of federal question jurisdiction.  See, e.g., Caggiano, 384 F. Supp. 2d at 690, 692 (granting remand motion where complaint alleged state law tort claims in connection with defendant drug companies' alleged marketing of prescription drug for off-label use; although complaint alleged that defendants' off-label promotion "violated various federal statutes and regulations," "these contextual allegations . . . are not enough to confer federal jurisdiction . . . [because] [t]he factual allegations set forth in the complaint state claims under New York law regardless of whether any federal law has been violated"); In re Reserve Fund Sec. & Derivative Litig., 2009 U.S. Dist. LEXIS 102411, at *23 (granting motion to remand; "At most, then, [federal regulations] would provide a standard of care that might be used to assess whether Defendants breached their contractual or fiduciary duties.  That federal law might serve to provide a standard of care for a state law claim, however, is an insufficient foundation for the exercise of federal jurisdiction."); Elmira Teachers' Assoc. v. Elmira City Sch. Dist., No. 05 Civ. 6513 (CJS), 2009 U.S. Dist. LEXIS 3893, at *18 (W.D.N.Y. Jan. 26, 2006) (granting motion to remand where federal statute merely provided standard of care for state breach of contract and negligence claims).

Because the Complaint does not "necessarily raise a stated federal issue," Grable, 545 U.S. at 314, there is no basis for the exercise of federal question jurisdiction.

**B.**     <u>There is No Diversity Jurisdiction</u>

Defendant also contends that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, because this is an action between a citizen of a state and citizens or subjects of a foreign state.  (Loughlin Ltr. at 7-9)  There is no dispute that Plaintiffs are all Israeli citizens.  BOC contends, however, that it must be deemed "a citizen of New York," and that therefore this Court has diversity jurisdiction.  (<u>Id.</u>)  In making this argument, Defendant relies on the International Banking Act of 1978 ("IBA"), 12 U.S.C. § 3101 <u>et</u> <u>seq.</u>, which permits a foreign bank to establish a federal branch – such as BOC's New York branches – with the approval of the Office of the Comptroller of the Currency.

> The IBA states in pertinent part:
>
> In establishing and operating a Federal branch or agency, a foreign bank shall be subject to such rules, regulations, and orders as the Comptroller considers appropriate to carry out this section, which shall include provisions for service of process and maintenance of branch and agency accounts separate from those of the parent bank.  Except as otherwise specifically provided in this Act or in rules, regulations, or orders adopted by the Comptroller under this section, operations of a foreign bank at a Federal branch or agency shall be <u>conducted with the same rights and privileges as a national bank at the same location and shall be subject to all the same duties, restrictions, penalties, liabilities, conditions, and limitations that would apply under the National Bank Act to a national bank doing business at the same location</u>. . . .

12 U.S.C. § 3102(b) (emphasis added).

Defendant argues that this statute, when read with 28 U.S.C. § 1348 – which states that "all national banking associations shall, for purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located" – indicates that BOC is a citizen of New York for purposes of diversity jurisdiction.  (Loughlin Ltr. at 7-9)  Defendant has not cited any case law supporting this

proposition, however, nor has the Court found any such authority.  To the contrary, two

courts have squarely rejected Defendant's argument.

In McHugh v. Westpac Banking Corp., No. 93 Civ. 3058, 1995 WL

243339 (N.D. Ill. Apr. 25, 1995), the defendant – an Australian banking corporation with

a branch office in Chicago – argued that because it had a license to operate a federal

branch of a foreign bank in Illinois, it should be deemed a citizen of Illinois for diversity

purposes:

> Defendant claims that, as § 3102 directs that a federal branch of a foreign
> bank be conducted with and subject to the same rights, privileges, duties,
> liabilities and conditions as a national bank, a federal branch of a foreign
> bank should also be subject to the specific jurisdictional grant and
> designation of citizenship of § 1348 which by its terms applies to national
> banking associations.

McHugh, 1995 WL 243339, at *2.

The McHugh court examined the legislative history and intent of Section

3102 and Section 1348 and concluded that "§ 3102(b) itself is not a grant of jurisdiction

. . . . [and that] [a]ccordingly, [it is not appropriate to] extend § 1348, which specifically

applies to national banking associations, to foreign banks with federal branches."  Id. at

*4.  In concluding that Congress had never intended the IBA to have jurisdictional

implications, the McHugh court noted that Congress' focus in enacting the IBA was on

achieving uniformity of treatment and comparative parity between foreign and domestic

banks.  Prior to the IBA, foreign banks could only obtain a charter from a state authority,

because the federal government did not charter foreign banks.  See id. at *2.

Accordingly, the treatment of foreign banks varied from state to state, and in some states

foreign banks enjoyed competitive advantages over domestic banks.  The IBA "sought to

provide foreign banks with 'national treatment' under which 'foreign enterprises . . . are

17

treated as competitive equals with their domestic counterparts.'" <u>Conference of State</u>

<u>Bank Supervisors v. Conover</u>, 715 F.2d 604, 606 (D.C. Cir. 1983), <u>cert.</u> <u>denied</u>, 466 U.S.

927 (1984) (quoting S. Rep. No. 1073, 95th Cong., 2d Sess. 2 (1978)).  While Congress

was concerned about competitive parity between domestic and foreign banks, there is no

evidence that it intended the IBA to affect the determination of citizenship of a foreign

bank for purposes of diversity jurisdiction:

> The legislative history of the [IBA] clearly evidences Congress' concern
> with establishing competitive parity between domestic banks and foreign
> banks.  However, neither the language of § 3102 nor the legislative history
> of the [IBA] indicates that § 1348's specific grant of jurisdiction over and
> designation of the citizenship of national banking associations was meant
> to encompass both foreign banks and domestic national banks.

<u>McHugh</u>, 1995 WL 243339, at *2.

The <u>McHugh</u> court also noted that the concerns that prompted Congress to

provide for alienage jurisdiction weigh against reading the IBA as providing that foreign

banks are citizens of any state in which they have established a federal branch.  As the

<u>McHugh</u> court explained, alienage jurisdiction was created to address "the failure of

individual states to give protection to foreigners under treaties and the fear of disputes

with foreign countries which might result from a failure to treat legal controversies on a

national level."  <u>Id.</u> at *4 (citations omitted).  "Given Congress' concern with providing

federal courts with jurisdiction over matters which may implicate international relations,"

the <u>McHugh</u> court reasoned that it was unlikely that the absence of a provision under the

IBA extending § 1348 to foreign banks with federal branches was due to mere

"congressional oversight."  <u>Id.</u> at *4.

The court in <u>R.W. Sawant & Co. v. Kozloff, Inc.</u>, 507 F. Supp. 614 (N.D. Ill. 1981), reached the same conclusion in construing Section 3106a of the IBA.[4]  In <u>R.W. Sawant</u>, an exporter brought an action against an importer, Standard Chartered Bank, and an insurer to recover for losses that the exporter had sustained in connection with a shipment of shrimp.  <u>R.W. Sawant</u>, 507 F. Supp. at 615.  The defendant bank argued that it was a citizen of Great Britain and that because plaintiff was likewise a foreign corporation, diversity of citizenship was lacking.  <u>See id.</u>  Plaintiff contended, however, that Standard Chartered Bank was doing business in Illinois and should be treated as a citizen of Illinois for jurisdictional purposes.  Plaintiff argued that under Section 3106a, "foreign banks doing business in the United States, such as Standard, must be treated in the same way as domestic banks," and that therefore the foreign bank "should not be permitted to use the technical label of 'alien' to escape jurisdiction."  <u>Id.</u> at 616.

The court squarely rejected plaintiff's argument:

> If Congress had intended section 1348 to encompass foreign banks . . . it would have amended that section in . . . the International Banking Act of 1978. . . . Therefore, the International Banking Act of 1978 does not

---

[4]  Section 3106a states in pertinent part:

> Every branch or agency of a foreign bank and every commercial lending company controlled by one or more foreign banks or by one or more foreign companies that control a foreign bank shall conduct its operations in the United States in full compliance with provisions of any law of the United States or any State thereof which –
>
> *          *          *          *
>
> (C) apply to national banks or State-chartered banks doing business in the State in which such branch or agency or commercial lending company, as the case may be, is doing business.

12 U.S.C. § 3106a.

Id. at 617.

Accordingly, the only two courts that have addressed this issue have concluded that the IBA does not include or effect a jurisdictional grant. This Court agrees that if Congress had intended the IBA to affect Section 1348 jurisdiction, it would have said so. Accordingly, BOC is not a citizen of New York by virtue of having established a federal branch in New York. Because Plaintiffs are all foreign citizens and Defendant is a foreign citizen, this Court does not have diversity jurisdiction over this action. Id. at 615-16 ("[t]he federal courts consistently have found jurisdiction lacking . . . when there are alien parties on both sides of the controversy").

## CONCLUSION

For the foregoing reasons, this action is remanded to state court. The Clerk of the Court is directed to terminate the following motions: 09 Civ. 2130 (PGG) Docket No. 5 and Docket No. 17. The Clerk of the Court is further directed to close this case and to return this action to the Clerk of the Supreme Court for the State of New York, New York County.

Dated: New York, New York
March 26, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge